COUNTRY GAS SERVICE, INC.,
Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

COUNTRY GAS DISTRIBUTORS, INC.,
Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

Nos. 7179, 7180.

United States Court of Appeals
First Circuit.

Heard Dec. 4, 1968.

Decided Jan. 15, 1969.

George A. Stella, Lawrence, Mass., with whom Robert B. Milgroom, Boston, Mass., was on brief, for appellants.

Issie L. Jenkins, Atty., Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Crombie J. D. Garrett, Attys., Dept. of Justice, Paul F. Markham, U. S. Atty., and Joseph A. Lena, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

PER CURIAM.

These are appeals from summary judgments entered against the corporate taxpayers, Country Gas Service, Inc. and Country Gas Distributors, Inc. in suits for refund of taxes which they alleged were erroneously and illegally assessed and collected. Country Gas Service seeks refunds for the fiscal years ending June 30, 1961, 1962 and 1963, while Country Gas Distributors' suit is for the calendar years 1960, 1961 and 1962.[1] The only claim that the tax was not lawfully due was based upon an oral agreement they assertedly made with the revenue agent. We hold that no such agreement could give them substantive rights.

During 1964 and 1965 Internal Revenue audited taxpayers' income tax returns and those of several related taxpayers, i. e., Clement Realty Trust, Charles and Barbara Clement and Danvers Hardware and Appliance Co., Inc. The revenue agent who conducted the audit, one McInnis, determined that adjustments were necessary. According to taxpayers, they agreed to accept reduc-

---

1. The cases are consolidated for purposes of appeal.

tions of rent and other corporate expenses in exchange for concessions by the government with regard to the tax treatment of the related taxpayers. They assert that one of these accommodations was that Clement Realty Trust would be taxed as a corporation. At the conclusion of the audit, taxpayers executed Form 870 thereby waiving the restrictions on assessment and collection of the proposed deficiencies.[2] At the same time they paid the amounts shown to be due on Form 870.

On January 20, 1965, Internal Revenue notified taxpayers' representative that Clement Realty Trust was revocable and that the income from it was taxable to the grantors; also, that because the statute of limitations was about to expire, an immediate statutory notice of deficiency would be issued. On December 21, 1966, taxpayers filed claims for refund for each of the years involved. When no action was taken by Internal Revenue the instant suit was commenced.[3] The district court entered summary judgment for the government on May 13, 1968, and this appeal followed.

It is fundamental that "[o]n appeal from a summary judgment, the only question is whether the allegations of the party against whom it was rendered were sufficient to raise a material or genuine issue of fact." 3 W. Barron & Holtzoff, Federal Practice and Procedure, § 1242 at 199 (Wright ed. 1958); see Gottlieb v. Isenman, 215 F.2d 184 (1st Cir. 1954). Taxpayers take the position that the alleged compromise with agent McInnis was legally binding; that this agreement was breached when Internal Revenue decided to tax Clement Realty Trust as a grantor's trust; that this breach caused taxpayers to be deprived of their property wrongfully, and that they are entitled to a refund of the entire amount of deficiencies agreed to in Form 870.

The narrow issue presented by this case is whether the revenue agent had authority to make a binding agreement. Obviously if there was no contract there could be no breach. The exclusive procedure for compromising tax liabilities is set forth in Int.Rev.Code of 1954 § 7122.[4] This section explicitly reposes

---

2. Int.Rev.Code of 1954. "SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.
   "(a) *Time for Filing Petition and Restriction on Assessment.*—Within 90 days, * * * after the notice of deficiency authorized in section 6212 is mailed * * * the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. * * *
   *    *    *    *    *
   "(d) *Waiver of Restrictions.*—The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary or his delegate, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency."
   The waiver authorized by subsection (d) is executed on form 870. In return for taxpayer's relinquishment of his right to sue in the Tax Court, interest is stopped from running due to delay in assessment. Also, taxpayer's right to claim and sue for a refund after payment of the amount assessed is preserved.

3. The complaints read in pertinent part:
   "At the conclusion of the tax examination by the Revenue Agent, Plaintiff delivered full payments on the proposed additional taxes at the same time it delivered Forms 870 to the Revenue Agent for itself and 'related taxpayers' as part of a compromise agreement. Said Revenue Agent failed to honor this compromise agreement by holding these and other payments and Forms 870 for an unreasonable length of time (over three months) before delivering said payments and SOME of these said Forms 870 to the Internal Revenue Service. After Plaintiff delivered said payments and Forms 870 to the said Revenue Agent, this Revenue Agent, by picking and choosing some parts of the compromise agreement and disregarding other parts of this said agreement, caused the Plaintiff to be deprived of its property wrongfully."

4. "SEC. 7122. COMPROMISES.
   (a) *Authorization.*—The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to refer-

such authority in "the Secretary or his delegate," and such delegation stops at the district director level.[5] Since the exclusive means of compromise established by § 7122 was not utilized in this case, any arrangement taxpayer made with agent McInnis had no legal standing. Consequently the only document with any relevance was Form 870 in which taxpayers unconditionally agreed to immediate assessment and collection of the deficiencies.

Taxpayers argue that revenue agents are authorized to make binding agreements with regard to allowable deductions without resort to § 7122. But this was precisely the situation in Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1928) in which such an agreement was held not to be binding.

Taxpayers further allege that agent McInnis kept the 870 forms and checks given him by taxpayers for a period of three months before forwarding them to his superiors. This delay, it is argued, forced Internal Revenue to issue an immediate statutory notice of deficiency before the statute of limitations had run, thus depriving taxpayers of their "right" to the usual administrative remedies of "conference" and "appellate review."

The only question presented to the court below was whether there was a compromise settlement between the government and taxpayers, and if so, whether it was breached by the government. That was the question passed on by the court on the motion for summary judgment and it is the only question be-

fore us on appeal. Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc., 176 F.2d 799 (1st Cir. 1949). At any rate, we think the contention is without merit. When taxpayers executed Form 870 unconditionally, they agreed to immediate assessment and collection, reserving the right to sue for refund. This substantive right they have not lost. If they wished to reserve their administrative remedies it behooved them not to sign an unconditional Form 870.

Affirmed.

---

ence to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."

5. "[6507] Commissioner Delegation Order No. 11 (Rev. 3), June 14, 1963, 28 F.R. 6836, July 3, 1963, effective July 1, 1963.
   [1954 Code Sec. 7122]
   \*    \*    \*    \*    \*
   1. Subject to the limitations contained in applicable regulations and

procedures, District Directors are delegated authority, under section 7122 of the Internal Revenue Code, to accept offers in compromise in cases in which the liability sought to be compromised (including any interest, additional amount, addition to the tax, or assessable penalty) is less than $100,000, and any offers involving specific penalties.

2. This authority may not be redelegated."