PHILIP H. GRESHAM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gresham v. Commissioner
Docket No. 6210-71.
United States Tax Court
T.C. Memo 1974-11; 1974 Tax Ct. Memo LEXIS 308; 33 T.C.M. (CCH) 39; T.C.M. (RIA) 74011; January 21, 1974, Filed. Philip H. Gresham, pro se.
Dudley W. Taylor, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION
FEATHERSTON, Judge: Respondent determined a deficiency in petitioner's income tax for 1967 in the amount of $2,841.91. The issue is whether petitioner is entitled to have his income for 1967 from his general merchandise store recomputed in an amended income tax return using the accrual method of accounting, rather than a hybrid method of accounting used in computing his income in the 2 original return for that year and in returns for prior years.
FINDINGS OF FACT
At the time the petition was filed in this proceeding, petitioner was a legal resident of Winder, Georgia. He filed his income tax return for *309 1967 with the Southeast Service Center, Chamblee, Georgia. On October 29, 1964, petitioner purchased a retail furniture store from B. L. Shepley for $15,486.24. Under the terms of the purchase contract, the consideration was allocated as follows: Inventory
$ 6,804.65
Fixtures
815.00
Accounts Receivable
7,866.59
$15,486.24
The store, operated as petitioner's sole proprietorship, The store, operated as petitioner's sole proprietorship, was managed by his father. Throughout the period in controversy, petitioner was employed as an engineer. The cash method of accounting was used in reporting the store's profits and losses, except that, in computing the cost of goods sold, the amount of the inventory purchased during each year was added to opening inventory and the closing inventory was subtracted from the sum of those two figures. The remainder was deducted from the gross receipts, and the resulting figure was treated as the gross profit. A bank 3 account, separate from petitioner's personal account, was maintained for the store.
The store was not financially successful, and in November 1967, petitioner liquidated the inventory and discontinued *310 the operation.
During the period of the store's operation, all the accounts receivable acquired at the time of the purchase in 1964 were collected, except for $769.53 which was claimed and allowed as a bad debt deduction for 1967. Petitioner reported none of the proceeds of these collections as income. Similarly, in computing his gross income for the taxable periods subsequent to the purchase of the store, he deducted from gross income the cost ($6,804.65) of the inventory on hand at the time of the purchase of the store. In Schedule C of his income tax return for 1965, petitioner claimed a depreciation deduction of $259. No depreciation deduction was claimed in his 1967 return.
During the period he owned the store, petitioner advanced a total of $8,621.65 to assist in covering its operational costs. This amount was reflected in the operating losses of the store shown on petitioner's Federal income tax returns for 1964, 1965, 1966, and 1967. 4 On his income tax return for 1967, petitioner deducted a loss of $5,719.82 from the store, computed as follows: Gross Receipts
$4,841.93
Beginning inventory
$5,330.30
Merchandise purchased
73.40
$5,403.70
Ending inventory
-0-
Cost of goods sold
$5,403.70
Gross profit
($ 561.77)
Other Business Deductions
Taxes
$ 199.90
Rent
100.00
Salaries
340.00
Insurance
37.15
Advances less collections
3,573.04
Interest and bank charges
1.00
Bad debts arising from sales
769.53
Other business expenses
137.43
Total
$5,158.05
Net Loss
($5,719.82)
*311 The item "Advances less collections" was computed as follows: Advances to business 1965
$1,662.94
Advances to business 1966
4,390.00
Advances to business 1967
2,568.71
Total
$8,621.65
Less collections from credit sales
5,048.61
Advances less collections
$3,573.04
In the notice of deficiency, respondent determined that petitioner had understated gross sales of the store by $5,048.61, having deducted that amount in computing 5 the $4,841.93 reported as gross sales on the return. It was further determined that no part of this $5,048.61 was deductible. The deduction of $3,573.04 for "Advances less collections" was also disallowed. The notice of deficiency also contains the following:
The issue raised at the hearing as to whether you are entitled to retroactively change your method of accounting from the cash method to the accrual method in taxable years 1966 and 1967 has been given careful consideration, and it is determined that you are not entitled to retroactively change your method of accounting in these years because consent of the Commissioner of Internal Revenue must be secured before a change is made in the method of accounting pursuant to *312 section 446(e) of the Internal Revenue Code.
OPINION
As we understand petitioner's testimony, he frankly admits that he recovered tax-free the $6,804.65 paid for the inventory, and he excluded from income, or deducted as a bad debt, the $7,866.59 paid for the accounts receivable. He also concedes that he obtained loss deductions for the $8,621.65 which he put into the business during 1965, 1966, and 1967. The record shows that petitioner claimed a depreciation deduction ($259) in his 1965 return, evidently with respect to the fixtures for the store costing $815, but claimed no depreciation deduction for 6 1967. The clear inference is that the cost basis of that property was fully recovered prior to 1967. Thus, petitioner received deductions or other adjustments to income for the full amount of his losses from the purchase and operation of the store.
While petitioner's position has not been clearly articulated, he apparently contends, nevertheless, that he should be permitted to file an amended return for 1967, recomputing his liability for that year under the accrual method of accounting. Under this method, gross sales would be reduced by $5,048.61, *313 representing "Collections from credit sales." Since the income from those sales accrued in prior years, it would not be includable in gross income for 1967 under the accrual method. Even under the accrual method, however, petitioner would not be entitled to a direct deduction for his cash investments in the store in 1967. He recovered those investments through operating loss deductions which, as noted above, have been allowed.
Our Findings disclose that, on his 1967 return and on returns for prior years, petitioner reported his income from the store on the cash basis, except in his 7 computations of cost of goods sold. He calculated his cost of goods sold by adding his opening inventory to his purchases during the year and subtracting the closing inventory from the sum of those two figures. In this respect his method was similar to the accrual method of accounting. Had petitioner used the cash method in computing cost of goods sold, he would have deducted only the cash payments for inventory during the year. Thus, his method of accounting was a hybrid one. He accounted for cost of goods sold in a manner consistent with the accrual method of accounting, but for all other items *314 he employed the cash method.
Ordinarily, the accrual method of accounting must be used with regard to purchases and sales where the taxpayer is engaged in selling merchandise from an inventory. Sec. 1.446-1(c) (2) (i), Income Tax Regs. However, the Commissioner may authorize a taxpayer to continue to use a method of accounting previously used, even though it is not specifically authorized by the regulations, "if, in the opinion of the Commissioner, income is clearly reflected by the use of such method." Sec. 1.446-1(c) (2) (ii), Income 8 Tax Regs. Moreover, section 446(e)[1] specifically prohibits a change in method of accounting without securing the consent of the Secretary or his delegate. We do not think respondent abused his discretion in denying effect to petitioner's effort to retroactively change his method of accounting for the income from the store in 1967, the final year of its operation. [2]
*315 9 Petitioner contends, however, that a revenue agent who examined his 1965 return advised him that he should have used the accrual method of accounting for the store and, consequently, he is entitled to do so. Petitioner introduced in evidence a complicated set of computations entitled "Amended Returns Schedule C 1964, 1965, 1966 & 1967" in which he claims to have reworked the results of the store's operations in accordance with the revenue agent's advice. Those computations reflect an overpayment rather than a deficiency for 1967 and change the tax results for the prior years.
The record does not show precisely what the revenue agent advised petitioner. Nor are we satisfied that petitioner's revised figures, considerably more favorable to him than those in his original returns, are accurate - particularly since we understand his testimony to concede that he received tax deductions or other adjustments for the full amount of his initial investment in the store as well as his subsequent cash advances. In any event, a mere suggestion by a revenue agent that a taxpayer's method of accounting is not a correct one does not authorize the taxpayer to change that method. Cf. *316 H. F. Campbell Co., 53 T.C. 439, 449-450 (1969), 54 T.C. 1021 (1970), affd. 10 443 F.2d 965 (C.A. 6, 1971). Nor would it aid petitioner's cause if he and the revenue agent had agreed that amended returns should be filed, because the Internal Revenue Service employee charged with responsibility for making the official decision reflected by the notice of deficiency rejected petitioner's effort to change his accounting method. The rule was stated in Sampson v. Commissioner, 444 F.2d 530, 531 (C.A. 6, 1971), affirming per curiam a Memorandum Opinion of this Court, as follows:
After disallowance of the deductions, the taxpayer husband met with a representative of the Appellate Division of the Internal Revenue Service in an attempt to settle his disputed tax liability. At this meeting an agreement was reached allowing all claimed deductions and taxpayer left the meeting with the understanding that a final settlement had been reached. However, the recommendations of the conferee of the Internal Revenue Service were rejected by his superiors and there were no further settlement negotiations.
Unfortunately, from the taxpayers' standpoint, an *317 informal agreement such as was reached in this case is not binding and has no legal effect. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S. Ct. 129, 73 L. Ed. 379 (1929); Cleveland Trust Company v. United States, 421 F.2d 475 (6th Cir. 1970); Country Gas Service v. United States, 405 F.2d 147 (1st Cir. 1969). 11 The trial record compels us to sustain respondent's determination.
Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.
(e) Requirement Respecting Change of Accounting Method. - Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.↩
2. Indeed, petitioner's testimony suggests that respondent may not have determined the maximum deficiency. Petitioner's method of accounting for inventory permitted him to take deductions for inventory even though he had not paid for it. He testified that in 1967, when the business was being closed, he negotiated some of the suppliers "down to 50 percent payoff." Yet there is no indication that these negotiated settlements were reflected on his 1967 return or the notice of deficiency. ↩