WALTER DAVID AND MARIAN DAVID, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent David v. Commissioner
Docket Nos. 39754-86, 4497-90, 4498-90, 4500-90
United States Tax Court
T.C. Memo 1993-621; 1993 Tax Ct. Memo LEXIS 642; 66 T.C.M. (CCH) 1774; December 27, 1993, Filed *642 Decision will be entered for respondent. For petitioners: Richard Alan Levine and Theodore D. Peyser. For respondent: Curt M. Rubin. DAWSON, GUSSIS
DAWSON; GUSSIS
MEMORANDUM OPINION DAWSON, Judge: These cases were assigned for trial or other disposition to Special Trial Judge James M. Gussis pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code in effect for the years in issue unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: These cases were consolidated for trial, briefing, and opinion. Respondent determined the following deficiencies and additions to tax: Walter David and Marian David, docket Nos. 39754-86, 4498-90 Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1981
$ 32,262.13
$ 1,900.01
50% of the
--
interest due
on $ 32,262.13
1982
29,531.00
--
--
--
Sheldon Jay David and Marilyn David, docket Nos. *643 4497-90, 4500-90 Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1981
$ 30,780.42
$ 1,781.87
50% of the
--  interest due
on $ 30,780.42
1982
28,317.00
1,415.85
50% of the
$ 7,079
interest due
on $ 28,317
Respondent also determined that petitioners Walter and Marian David are liable for increased interest under section 6621(c) for 1981 on $ 32,262.13. Respondent also determined that petitioners Sheldon and Marilyn David are liable for increased interest under section 6621(c) for 1981 on $ 30,780.42 and for 1982 on $ 28,317. Petitioners have conceded the liabilities for increased interest under section 6621(c) and the addition to tax under section 6661(a) for 1982 in docket No. 4500-90 (Sheldon and Marilyn David). The only issues remaining for decision in these consolidated cases are: (1) Whether binding settlement agreements were entered into between petitioners and respondent for the 1981 and 1982 tax years; (2) whether petitioners are liable for the negligence additions to tax pursuant to sections 6653(a)(1) and (2) in the years involved. Some of the facts have been stipulated and they are so *644 found. The stipulations of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners Walter and Marian David resided in Woodmere, New York, at the time they filed their petitions. Sheldon and Marilyn David resided in Brooklyn, New York, at the time they filed their petitions. In December 1981, Walter and Marian David invested in Mid-Continent Drilling Associates (MCDA-II), a limited partnership. MCDA-II is one of nine limited partnerships which comprise the Petro-Tech National Litigation Project. In Webb v. Commissioner, T.C. Memo. 1990-556, this Court held that MCDA-II was a tax shelter, the activities of which were not engaged in with a profit objective. On their joint Federal income tax returns for the years 1981 and 1982, Walter and Marian David claimed partnership losses of $ 59,400 and $ 64,451, respectively, which were disallowed in full. In December 1981, Sheldon and Marilyn David invested in MCDA-II. On their joint Federal income tax returns for 1981 and 1982, they claimed partnership losses of $ 59,400 and $ 64,451, respectively, which were disallowed in full. Walter David graduated from City College *645 in 1961 with a bachelor of business administration degree. He majored in accounting. He then became associated with W. B. David & Co., a diamond business in New York City founded by his father, Herman David. Sheldon David graduated from Yeshiva College in 1969 with a bachelor of arts degree, a bachelor of Hebrew literature degree and a Hebrew teacher's diploma. He later earned a master of business administration degree from Long Island Graduate School of Business with a specialty in marketing. After college, Sheldon David also joined W. B. David & Co. On August 11, 1988, the 1982 Federal income tax return filed by Sheldon and Marilyn David was assigned to an Internal Revenue Service appeals officer, Seymour Margolis. On October 14, 1988, the 1981 tax return filed by Walter and Marian David was also assigned to Margolis. By letter dated November 2, 1988, Margolis made a settlement offer to Walter and Marian David and, early in November 1988, Margolis made an identical settlement offer to Sheldon and Marilyn David. By telephone conversation on November 14, 1988, Stephen Burr, the certified public accountant who represented the above petitioners, stated that the petitioners *646 would accept the offer and that he would provide verification of their cash investments. On July 7, 1989, Margolis sent to Burr an audit statement with respect to Walter and Marian David for 1981 and a Form 870-AD for 1981. On July 10, 1989, Margolis sent to Burr an audit statement with respect to Sheldon and Marilyn David for 1981 and 1982 and a Form 870-AD for 1981 and 1982. The July 7 and July 10 transmittal letters accompanying the audit statements and the Forms 870-AD state that "we will notify you when the proposed settlement is approved." Margolis did not receive any executed Forms 870-AD back from any of the petitioners for the years involved. By letter dated September 28, 1989, Margolis informed Burr that the reports sent to him in July 1989 with respect to, inter alia, Walter David and Sheldon David were incorrect and that the settlement offer was no longer available. Petitioners argue that on November 14, 1988, Burr orally accepted a written settlement offer made by Margolis resulting in binding settlement agreements with respect to the 1981 and 1982 tax years. This Court has repeatedly declined to enforce a settlement agreement where the person entering into the agreement *647 on behalf of the Commissioner lacked the authority to bind the Commissioner. Estate of Jones v. Commissioner, 795 F.2d 566 (6th Cir. 1986), affg. T.C. Memo. 1984-53; Gardner v. Commissioner, 75 T.C. 475 (1980); Cole v. Commissioner, 30 T.C. 665, 674 (1958), affd. per curiam 272 F.2d 13 (2d Cir. 1959); Ginella v. Commissioner, T.C. Memo. 1991-625. Delegation Order No. 66, as applicable, sets forth the titles of those individuals vested with the authority to settle tax cases not docketed before the Tax Court. Settlement authority in the Appeals Office is specifically vested only in Chief and Associate Chiefs of Appeals and Appeals Team Chiefs. Margolis, as an appeals officer, was not an official with appropriate settlement authority and thus lacked the authority to enter into binding settlement agreements with petitioners in the instant cases. Petitioners' contention that Margolis, as an appeals officer, somehow derived settlement authority under Delegation Order No. 225, 52 Fed. Reg. 13008 *648 (April 20, 1987), is without merit. Delegation Order No. 225, supra, which was promulgated in 1987, authorized officials in the Examination Division and others to settle certain tax shelter issues based on settlement positions taken by Chief Counsel or the Appeals Office. There is nothing in Delegation Order No. 225, supra, that purports to circumvent or override the procedures established in Delegation Order No. 66 with respect to the authority therein granted to enter into binding settlement agreements. Delegation Order No. 225, supra, does not purport to extend settlement authority to appeals officers. Moreover, Delegation Order No. 225, supra, specifically provides that "the delegation of authority granted herein may not be redelegated." Petitioners further argue that they signed and mailed to respondent the Forms 870-AD purportedly settling their tax liabilities for 1981 and 1982, thereby entering into binding settlement agreements. Respondent has no record of receiving the signed Forms 870-AD. Moreover, evidence was introduced that as of July 8, 1988, all offers of settlement pertaining to the Petro-Tech National Litigation Project were withdrawn. The *649 fact that, as of November 2, 1988, Margolis mistakenly believed he could still make offers of settlement in regard to Petro-Tech cases is irrelevant. In short, neither Margolis nor anyone else had the authority to enter into a settlement agreement on behalf of respondent with respect to Petro-Tech cases as of July 8, 1988. After careful review we find that the record in these cases clearly establishes that no binding settlement agreements were entered into between the parties for either 1981 or 1982. We note that petitioners' argument that we should enforce the purported settlement agreements because respondent implemented an identical agreement with a similarly situated taxpayer is unpersuasive. Our responsibility is to apply the law to the facts of the cases before us; how the Commissioner treated other taxpayers is irrelevant. [2]Davis v. Commissioner, 65 T.C. 1014, 1022 (1976); Avers v. Commissioner, T.C. Memo. 1988-176. *650 Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of the rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on the portion of the underpayment of tax attributable to negligence. Negligence as used in section 6653(a) is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Under certain circumstances reliance by a taxpayer on the advice of a competent adviser, can be a defense to the additions to tax for negligence. See, e.g. United States v. Boyle, 469 U.S. 241, 250 (1985); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988) affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). However, the reliance must be reasonable, in good faith, and based upon full disclosure. Ewing v. Commissioner, supra; *651 Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). Relying on United States v. Boyle, 469 U.S. 241 (1985), petitioners argue they are not liable for the negligence additions to tax because they relied upon the advice of their accountants Stephen Burr and Robert Feinman in deciding to invest in MCDA-II and thus exercised reasonable care. Reliance on professional advice, standing alone, however, is not an absolute defense to negligence, but rather a factor to be considered. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.    , 111 S. Ct. 2631 (1991). It must first be established that such reliance was reasonable. United States v. Boyle, supra at 250. Petitioners have not shown that it was reasonable for them to rely upon the advice of Feinman and Burr. Feinman and Burr both testified that they had no knowledge or expertise in the area of oil and gas drilling. Nor is there anything in the record indicating that Feinman and Burr had first *652 hand knowledge of MCDA-II. In advising petitioners to invest in MCDA-II, both Feinman and Burr relied entirely on the materials contained in the offering memorandum. In addition, in preparing petitioners' 1981 and 1982 returns, Feinman and Burr relied solely on the statements of promoters reflected on Schedule K-1s prepared by the partnership's accountants, Laventhol & Horwath, as to petitioners' distributive shares of partnership losses for 1981 and 1982. We have rejected pleas of reliance when neither the taxpayer nor the expert" relied upon by the taxpayer knew anything about the business involved. Freytag v. Commissioner, supra; Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Rogers v. Commissioner, T.C. Memo. 1990-619. We fail to discern any reason for not doing so in this case. Petitioners' contention that, in making their investments, they relied on the fact that a nationally known accounting firm had been retained by the promoters of the MCDA-II program to prepare the tax returns for the partnership and *653 audit the partnership books is unconvincing. Petitioners' reliance was not justified. Nothing in the record indicates that the accounting firm in question purported to have first hand knowledge of the economic validity of the several programs contemplated in the MCDA-II offering memorandum. In fact, the letter from the accounting firm accompanying the Schedule K-1 form reflecting the partnership tax returns filed for the appropriate taxable year states that the information on the Schedule K-1 form was not intended to represent financial data which had been subjected to auditing procedures or which had been prepared in accordance with generally accepted accounting principles. The accounting firm also indicated in its letter that it did not express an opinion as to the information submitted. In short, we do not believe that petitioners' purported reliance on the accounting firm was reasonable and in good faith. We have considered the case of Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, where the Court of Appeals held that the taxpayers, who were unsophisticated investors with limited *654 prior investment experience and with no formal education beyond high school, were not liable for the negligence-related additions to tax. The Court of Appeals reasoned that due care did not require moderate income investors to conduct an independent investigation of their investment. The Heasley case is factually distinguishable. Walter David and Sheldon David were college graduates. In 1981 Walter David and Sheldon David were owners and managers of a diamond business. Unlike the taxpayers in the Heasley case, petitioners did not establish that they intended to profit from their investments in MCDA-II, and we are not persuaded that their purported efforts to monitor their investments were in any way meaningful. We conclude that the Heasley case is inapplicable here. Petitioners presented evidence of a jury verdict against Laventhol & Horwath in a fraud case brought by investors of MCDA-II in the United States District Court, Southern District of Texas, Houston Division. Petitioners argue that a finding of fraud in the District Court case negates a finding of negligence in the instant case. In essence, petitioners request that we take judicial notice of the findings *655 of fact made by the jury in the District Court case and upon which they based their verdict. We take judicial notice of the jury award pursuant to Fed. R. Evid. 201, but we do not take judicial notice of the specific findings of fact on which the verdict is based. Rule 201(b) requires that before a fact can be judicially noticed it must be either (1) generally known within the community or (2) capable of accurate and ready determination by sources whose accuracy cannot reasonable be questioned. Estate of Reis v. Commissioner, 87 T.C. 1016, 1026 (1986); see also Petzoldt v. Commissioner, 92 T.C. 661, 674-676 (1989). The findings of fact on which the jury's verdict is based do not satisfy the two tests of Rule 201(b). They are not generally known to the public, nor are they so indisputable that their accuracy cannot reasonably be questioned. The mere fact that a jury in one case makes findings of fact is not a basis for another court to take judicial notice of those findings and deem them indisputably established for purposes of the pending litigation. Estate of Reis v. Commissioner, supra at 1028. *656 Furthermore, we note that petitioners' reliance on Reile v. Commissioner, T.C. Memo 1992-488 is misplaced. In Reile, the Court found that the taxpayers' reliance upon the advice of their accountant was reasonable and in good faith, thereby negating a finding of negligence. The Court did not rely upon another Court's finding of fraud for its holding as petitioners suggest on brief. Respondent's determinations with respect to the negligence-related additions to tax are sustained. To reflect the foregoing, Decisions will be entered for respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Sheldon Jay David and Marilyn David, docket Nos. 4497-90 and 4500-90; Walter David and Marian David, docket No. 4498-90.↩
2. Because the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 648, applies to partnership taxable years beginning after Sept. 3, 1982, the years before the Court are pre-TEFRA. For years to which TEFRA is applicable, partners have the right to enter into settlement agreements the terms of which are consistent with those of agreements entered into by the Commissioner with other partners. Sec. 6224(c)(2).↩